# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1911.

---

Chicago Great Western Railway Company, Appellee, v. Pittsburgh Spring & Steel Company, Appellant.

### Gen. No. 15,382.

CONTRACTS—*pertaining to claim for rebates construed. Held,* that the terms of the particular contract in question in this case did not entitle a railroad company to recover of a company engaged in manufacturing springs for its use, rebates in connection with the construction of springs for car manufacturers engaged in providing new equipment for such railway company.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and judgment here. Opinion filed March 3, 1911.

JOB & TAYLOR, for appellant.

CHARLES T. FARSON and GARDNER, STERN & ANDERSON, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The principal question presented on this record is the one of liability.

Appellant, Pittsburgh Spring & Steel Company, brought a fourth class action in the Municipal Court

VOL. CLX 1         (1)

2 APPELLATE COURTS OF ILLINOIS.

Chicago G. W. Ry. Co. v. Pittsburgh S. & S. Co., 160 Ill. App. 1.

of Chicago, against the Chicago Great Western Railway Company for $996.40 balance due for springs sold and delivered. The Railway Company subsequently commenced an independent first class action in the same court against the Steel Company for the recovery of rebates alleged to be due from the Steel Company on springs sold and delivered by it to F. M. Hicks & Co. and to the Pullman Company, and used by them in the manufacture of cars for the Railway Company, such rebates being equal to the difference between the prices paid by the Railway Company in pursuance of its contracts with the Hicks Company and the Pullman Company, and the contract price for springs in the annual contract between the Railway Company and the Steel Company. These suits were consolidated, and were tried together as one suit before the court without a jury, and a judgment was rendered in favor of the Railway Company against the Steel Company for $2,311.48, being the difference between the total amount found by the court to be due from the Steel Company to the Railway Company, for so-called rebates, and the amount due from the Railway Company to the Steel Company for springs furnished under the annual contract between them.

In the case brought by the Railway Company against the Steel Company, a declaration was filed containing two special counts, one in which the contract with the Hicks Company was set out, and the other in which the contract with the Pullman Company was averred. These counts set out the making of the contract between the Railway Company and the Steel Company and its breach by refusing to give the plaintiff Railway Company the benefits as to prices of its annual contract, in the construction of the cars by the Hicks Company and the Pullman Company.

The question of liability for the rebates involved in this action turns, as stated by attorneys for appellee, on the construction of the contract between the Steel Company and the Railway Company. If, under that

contract the Railway Company is entitled to receive from the Steel Company all that the latter collected from car building companies for springs sold to them and used by them in cars built for the Railway Company, in excess of the prices for springs fixed in the contract between the Steel Company and the Railway Company, then a right of action may exist, assuming that legal proof is made. The first question then is the question of intent of the parties as expressed in the terms used in the contract between them. The contract is in writing and reads as follows:

"ST. PAUL, MINN., Dec. ——, 1905.

A. D. WARD, ESQ.,
     Pur. Agent Chicago Great Western Ry.,
       St. Paul, Minn.

DEAR SIR:—

We beg to submit, herewith, our proposition to furnish your Company with locomotive, passenger, and Freight Car Springs on your current orders for repairs, and also for such springs as may be required for new equipment ordered during the term of this agreement; you to require the Locomotive and Car Companies to purchase and use our springs.

We will furnish the Chicago Great Western Railway and lines controlled and operated by it with springs at the following prices:

Locomotive Driving & Engine Truck
    Springs .........................3.75¢ per lb.
Plain End Tender Springs...........3.62½¢ per lb.
Full Elliptic Tender Springs,.........3.50¢ per lb.
Coach & Caboose Elliptic springs.....3.50¢ " "
Coach Equalizing, Coil Driving and
    Freight-Bolster and Draft springs
    and all other coil springs of steel
    not less than ⅝" diam. round,....1.75¢ " "
M. C. B. Standard Pressed Steel
    Freight Bolster Plates........... .95¢ per set.
(of 4 top and 4 bottom plates.)
This price includes cost of assembling
the bolster springs into groups ready
for application.
All springs covered by this contract to

4 APPELLATE COURTS OF ILLINOIS.

Chicago G. W. Ry. Co. v. Pittsburgh S. & S. Co., 160 Ill. App. 1.

be Open Hearth Steel Pennsylvania Analysis. Terms net Thirty (30) days from date of invoice.

We will guarantee all Locomotive springs for one year and Coach & Caboose Elliptic and Freight Bolster springs for five years, and will replace any that fail upon their return to us, we paying freight both ways to and from point of delivery named.

We will deliver all springs on your current orders f. o. b. Chicago, Ill., and springs for new equipment to points where Locomotive and Car Companies are located if not west of East St. Louis, Chicago, Ill., or south of Louisville, Ky.

We will repair springs at the above prices for new material used, and charge you 2.90c per pound for re-working the old material and credit you with scrap at market prices, you to deliver the old springs f. o. b. cars at Pittsburg, and we to prepay on return to Chicago, Ill.

Delays in making deliveries due to fires, strikes or other reasons beyond our control will relieve us of liability.

This contract to take effect January 1st, 1906, and to remain in force for one year from that date.

Respectfully submitted.

PITTSBURGH SPRING & STEEL CO.,
(Signed) by RANK & GOODELL,
Agents."

"Accepted.
A. D. WARD,
For C. G. W. Ry.
Date December 19, 1905."

The particular language relied upon as expressing the intention of the parties to make the Steel Company accountable to the Railway Company for these rebates, or, for the amount of the excess in prices charged to the car manufacturing companies for the springs over and above the prices named in the contract to the Railway Company, appear in the first paragraph of the contract, and in the provision: "And also for such springs as may be required for new equip-

ment ordered during the term of this agreement; you to require the Locomotive and Car Companies to purchase and use our springs;" and in the paragraph of the contract reading: "We will deliver all springs on your current orders f. o. b. Chicago, Ill., and springs for new equipment to points where Locomotive and Car Companies are located, if not west of East St. Louis, Chicago, Ill., or south of Louisville, Ky."

We think there can be no doubt that the contract contemplates all direct sales of springs to the Railway Company, whether the springs are required by the Railway Company for repairs or for new equipment, and whether used by the Railway Company itself in making repairs, or in constructing new cars, or by Locomotive and Car Companies employed by the Railway Company by special contracts or otherwise, where the Railway Company purchased the springs and furnished them to the car manufacturing companies to be used in the construction of cars. Such purchases of springs by the Railway Company would clearly fall within the intent of the parties as expressed in the terms of the contract. The sales here involved, however, in the action by the Railway Company against the Steel Company, are sales to the Hicks Company and the Pullman Company of springs used by those companies in fulfilling certain contracts made by them with the Railway Company for new equipment, and the controversy between the parties is whether or not such sales are also within the true intent and meaning of the contract, and must be made at the prices named therein for springs sold to the Railway Company, and if not so made a breach of the contract results.

In our opinion such sales made by the Steel Company to locomotive and car companies are not within the terms of the contract, and are not controlled or affected by the prices named therein. We find no terms or language in the contract which directly express any such intent of the parties, or which by any

6          APPELLATE COURTS OF ILLINOIS.

Chicago G. W. Ry. Co. v. Pittsburgh S. & S. Co., 160 Ill. App. 1.

reasonable construction can be made to express such intention. There are no provisions in the contract whereby the Steel Company was to be informed when it made its prices for springs to car manufacturers, that they contemplated using the Steel Company's springs in the building of cars for the Railway Company. Nor is there any provision requiring the Steel Company to make inquiry as to such use of its springs when it was requested to make prices to car manufacturers. We do not find any agreement in the contract requiring the Steel Company to pay back to the Railway Company any excess prices, or to account to it in any way for any excess prices which it received from car builders over the contract prices named in the Railway Company's contract. There is nothing in the contract, or in the relation of the parties to it, created thereby, from which by construction or otherwise any obligation arose on the part of the Steel Company to pay over to the Railway Company, or account to it for the excess of prices, or rebates, sued for in this action.

It is clear, we think, that if any such obligation on the part of the Steel Company exists, it must grow out of or spring from the contract set out in the declaration, and finding no such obligation in the contract or springing from it in the course of the business contemplated therein, we hold that no right of action is shown by the special counts of the declaration, or either of them; and we further hold that the evidence fails to show that the Steel Company has in its possession money which in equity and good conscience belongs to the Railway Company, and hence the evidence fails to show that the latter company has any right of action against the Steel Company upon the common counts in the declaration.

Holding that no right of recovery exists in favor of appellee, it is unnecessary to discuss the other assignments of error.

It is agreed and conceded that the Railway Company became indebted on November 14, 1906, to the Steel Company in the sum of $996.40 for a shipment of goods on that date by the Steel Company to the Railway Company, for recovery of which the Steel Company brought suit against the Railway in the Municipal Court of Chicago. That suit was consolidated with this cause. Appellant, Pittsburgh Spring & Steel Company, is therefore entitled to a judgment against appellee, Chicago Great Western Railway Company, for the sum of $996.40, with interest thereon from November 14, 1906, amounting to $1,208.

The judgment of the lower court is reversed, and on a finding of facts judgment is entered here in favor of appellant, Pittsburgh Spring & Steel Company, against appellee, Chicago Great Western Railway Company, for $1,208 and costs in this and the Municipal Court of Chicago.

*Reversed with finding and judgment here.*